UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD DEEDS and SANDRA DEEDS, <br><br>Plaintiff, <br><br>vs. <br><br>DONALD HELLING, *et al.*, <br><br>Defendants. | 3:07-CV-00060-ECR (VPC) <br><br>**REPORT AND RECOMMENDATION** <br>**OF U.S. MAGISTRATE JUDGE** <br><br>August 21, 2007 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiffs' motion for a temporary restraining order (#4). Defendants opposed (#22) and plaintiffs replied (#24). The court has throughly reviewed the record and the motions and recommends that plaintiffs' motion (#4) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Richard Deeds and Sandra Deeds (collectively "plaintiffs") filed their complaint on February 6, 2007 (#2). Richard Deeds, a *pro se* inmate currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC"), and Sandra Deeds, a former NDOC employee, are married. *Id.* Plaintiffs bring this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of their Fourteenth Amendment rights to due process and "guarantee of a fair parole hearing," and First Amendment right to be free from retaliation.[1] *Id.* Plaintiffs name as defendants Donald Helling, NNCC Warden; John Morrow, Parole Board Commissioner; Senior Correctional Officer Peabody; Dorla

---

[1] The court notes that although both Richard and Sandra Deeds are named plaintiffs, the allegations of the complaint are written in the first-person, presumably by Richard Deeds (#2).

Salting, Parole Board Chairman; Art Vogt, Psychologist; and Glen Whorton, former NDOC Director. *Id.*

After dismissals, only certain claims and defendants remain.[2] In count I, plaintiffs allege that defendant Helling violated their Fourteenth Amendment substantive due process rights by arbitrarily suspending their visitation privileges for no legitimate reason (#2, p. 4). In count II, plaintiffs allege that defendant Helling suspended their visitation privileges in retaliation for Mr. Deeds's previous lawsuits. *Id.*, p. 5. In count V, plaintiffs allege that defendants Peabody and Helling violated Mr. Deeds's Fourteenth Amendment right to procedural due process when his personal property, including food, clothing, and headphones, was removed pursuant to a prison regulation which disallows inmate possession of excessive personal property. *Id.*, p. 6-B.

Plaintiffs were married on May 9, 2001 (#4, pp. 2-3). Mrs. Deeds is a former NDOC employee. *Id.* The evidence reveals that on July 27, 2001, former NNCC Warden David Meligan approved the plaintiffs' request for visitation privileges. *Id.*, Exhibit 2. On May 23, 2006, defendant Helling suspended plaintiffs' visitation privileges based on Mrs. Deeds's past employment with NDOC, stating that granting Mrs. Deeds visitation rights had been in "error." *Id.*, Exhibit 3. On July 6, 2006, former NDOC Director Glen Whorton stated via letter to Mrs. Deeds that

> The Nevada Department of Corrections has a problem with former employees who have developed relationships with inmates causing serious security and safety concerns with this department. This very fact of allowing visits can and has encouraged inmates to compromise staff. This is evident of escape, resulting in violent crimes from NNCC in the last year.

*Id.*, Exhibit 4. In response to Mr. Deeds's grievances on this issue, NDOC stated that staff was merely enforcing NDOC policy, and that the policy applied "department-wide," not just at NNCC. *Id.*, Exhibit 5. Additionally, an NDOC official stated in an October 18, 2006, "Tort Claim Recommendation" form that the plaintiffs' visitation privileges had been permitted "by the

---

[2] On June 7, 2007, the court dismissed all claims for monetary relief against individual defendants in their official capacities, count I's procedural due process claim regarding suspension of visitation privileges, count II's retaliation claim against defendant Whorton, and counts III and IV (#11). On July 16, 2007, the court denied the plaintiffs' two motions for reconsideration of the court's June 7, 2007 order (#20).

2

warden in violation of Department of Correction's guidelines" and that only the NDOC Director may grant such visitation privileges. *Id.*, Exhibit 6.

On February 7, 2007, plaintiffs filed a motion for temporary restraining order (#4). On February 12, 2007, the District Court denied plaintiff's motion because it did not comply with the requirements of Federal Rule of Civil Procedure 65(b), but construed the motion as a motion for preliminary injunction (#8 and #9). The court notes that plaintiffs are proceeding *in pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Standard

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also*

3

*Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813. Preliminary injunctive relief is designed to preserve the status quo until the court has an opportunity to hear the lawsuit on its merits. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

### B. Analysis

Plaintiffs request a preliminary injunction based on counts I and II of their complaint, to require defendant Helling to reinstate their visitation privileges (#4).

#### 1. Likelihood of Success on the Merits

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

#### a. Substantive Due Process

Plaintiffs contend that they have successfully visited each other without incident between 2001 and 2006 (#4). Plaintiffs argue that because they have been visiting each other for five years, and because AR 719 states that visiting privileges, once granted, may not be suspended absent proof of personal misconduct, defendants violated their due process rights by arbitrarily revoking visitation in the absence of any misconduct. *Id.*, p. 9; *see also* #24, p. 8. Plaintiffs assert that they based their decision to marry in 2001 on the "express assurance that approved visitation was possible" (#4, p. 6).[3]

---

[3] The court notes that plaintiffs devote much of their motion and reply to arguing that by granting them permission to visit through AR 719, defendants have created a liberty interest (#4, p. 9; #24, p. 8).

4

Defendants state that former employees who want to visit an inmate must obtain permission from the warden of the particular institution (#22, p. 4). The warden then makes a recommendation to the Director, who has final approval. *Id.* Defendants argue that AR 719 is rationally related to legitimate correctional goals because former employees are not absolutely barred from visiting; rather, defendants make visitation decisions on a case-by-case basis, considering the safety and security of the institution. *Id.*

It is clear that prisoners have no fundamental due process right to unfettered visitation. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *see also Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002). To prove a substantive due process claim for actions that do not implicate a fundamental right, plaintiffs must demonstrate that defendants' actions were "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995) (*quoting Euclid v. Amber Realty Co.*, 272 U.S. 365, 395 (1926)). The Supreme Court has stated that "[t]he very object of imprisonment is confinement. Many liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted). Although the Court in *Overton* found that not all rights to intimate association are terminated by incarceration, courts will uphold visitation restrictions which "bear a rational relation to legitimate penological interests." *Id.* at 132.

There is no evidence currently before the court which demonstrates that plaintiffs are

---

However, this court has already found that plaintiffs have no fundamental due process right to unfettered visitation, nor do they have a state-created liberty interest in visitation pursuant to AR 719 (#11, pp. 4-5).
Plaintiffs also cite to *Salisbury v. List*, 501 F. Supp. 105 (D. Nev. 1980) to support their argument that a fundamental right is at issue here (#24, p. 9). In *Salisbury*, this court held that a Nevada prison regulation declaring that the Director had discretion over whether a prisoner could marry -- without any compelling justification -- was an unconstitutional interference with the fundamental right to marry. *Salisbury*, 501 F. Supp at 110. However, whether plaintiffs have the right to marry is not at issue here; notably, they are already married. Rather, the issue in this case is whether defendants arbitrarily, for no substantial reason related to the public health, safety, morals, or general welfare, suspended plaintiffs' visitation privileges.

5

likely to succeed on their substantive due process claim. The evidence does not reveal that defendants revoked plaintiffs' visitation privileges in an arbitrary manner; in fact, plaintiffs' own evidence, if true, demonstrates that NDOC made a determination that certain former employees posed a threat to the security of the institution after a recent inmate escape which resulted in violent crimes against the public (#4, Exhibit 4). Prison officials have a legitimate interest in the safety and security of the institution. *Hudson v. Palmer*, 468 U.S. 517, 524 (1984) ("[t]he curtailment of certain rights is necessary... to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security") (citations omitted). Since defendants proffer a legitimate reason, and there is no evidence before the court which indicates that defendants acted arbitrarily, the court cannot conclude that plaintiffs are likely to prevail on the merits of their due process claim.

### b. Retaliation

Plaintiffs also allege that defendants revoked their visitation rights in retaliation for Mr. Deeds's prior lawsuits (#4, p. 5). Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *see also Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Pratt*, 65 F.3d at 807. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Ninth Circuit has recognized that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt*, 65 F.3d at 808.

Again, based on the evidence currently before the court, the court cannot conclude that it is likely that plaintiffs will succeed in proving their retaliation claim. It is true that the revocation of the plaintiffs' visiting privileges on May 23, 2006, came close in time to a June 26,

2006, settlement conference in another one of Mr. Deeds's lawsuits against the defendants. *See Deeds v. Bayer*, 3:00-cv-00453-LRH (VPC) (#93 and #102). However, it also appears that the revocation of the plaintiffs' visitation privileges occurred after another prisoner escaped from NNCC – the same institution in which Mr. Deeds is currently incarcerated – and committed violent crimes against the public (#4, Exhibit 4). If, in their discretion, defendants have determined that a former NDOC employee poses a security risk due to his or her knowledge of the security of the institution, the court will not question that legitimate determination. Without evidence of improper motive on the part of the defendants, plaintiffs will not be likely to carry their burden of proving that there was no legitimate correctional goal in revoking plaintiffs' visitation privileges.

### 2. Irreparable Harm

To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably injured without the injunction. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) (*citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief")).

Plaintiffs argue that they based their decision to marry on the fact that they would be permitted to visit, and that the revocation of their right to visit has implicitly injured their fundamental First Amendment right to marry (#24, p. 8). Plaintiffs further argue that Mrs. Deeds is Mr. Deeds's only visitor, and that because Mr. Deeds is "ill, disabled, and denied medical care," he may not have long to live. *Id.* However, the court sees no irreparable injury here. There is no medical evidence currently before the court that Mr. Deeds "may not have long to live." Further, while plaintiffs clearly would like to visit each other, they can still speak on the phone and write letters to each other. As there is no identifiable injury, plaintiffs fail to satisfy this element.

///

7

### 3. Balance of Hardships and Public Interest

Defendants argue that determining the regulations for "the safe and efficient operation of a prison on a day-to-day basis has traditionally been entrusted to the expertise of prison officials" (#22, p. 5). The court agrees. It is not for this court to determine whether allowing former NDOC employees to visit inmates presents a security risk to prison officials, other inmates, and the general public. Further, plaintiffs have not presented evidence to the court to support their argument that there are no security risks present to their personal situation. These factors weigh in favor of defendants.

### III. CONCLUSION

Based on the foregoing, the court concludes that the plaintiffs are not likely to prevail on the merits of their due process and retaliation claims, have not demonstrated irreparable injury, and that the balance of hardships and public interest factor weigh in favor of the defendants. As such, the court recommends that plaintiff's motion for a preliminary injunction (#4) be **DENIED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///
///
///
///
///
///

8

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiffs' motion for a preliminary injunction (#4) be DENIED.

**DATED:** August 21, 2007.

_____
UNITED STATES MAGISTRATE JUDGE